1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    MICHAEL AARON WITKIN,                     No.  2:17-cv-2692 DAD AC P

12              Plaintiff,

13         v.                                   ORDER AND FINDINGS AND
                                                RECOMMENDATIONS
14    D. BLACKWELL, et al.,

15              Defendants.

16

17         Plaintiff, a former state inmate proceeding without an attorney, seeks relief pursuant to 42

18    U.S.C. § 1983.  Currently pending before the court is defendants' motion to dismiss pursuant to

19    28 U.S.C. § 1915(e)(2)(A).  ECF No. 31.  The motion is fully briefed.  See ECF No. 35, 36.  For

20    the reasons explained below, the undersigned recommends the court deny defendants' motion.

21         I.       Background

22                  A.  Complaint and In Forma Pauperis ("IFP") Application

23         On December 26, 2017, while plaintiff was an inmate in state custody, he filed a

24    complaint initiating this case.  ECF No. 1.  On January 4, 2018, plaintiff filed a motion to

25    proceed IFP.  ECF No. 3.  In his IFP application, signed December 14, 2014, plaintiff declared

26    under penalty of perjury that: he was "unable to pay the fees for these proceedings or give

27    security therefor"; he had not "received any money from the following sources over the last

28    twelve months," including "[a]ny other sources"; and that he did not have any assets.  Id. at 1-2.

1

1    Plaintiff attached a "CDCR Inmate Statement Report" with his application, which indicated that

2    he had a "Current Available Balance" of $0.00 and $2,535.00 in "PLRA" obligations for seven

3    separate cases.  Id. at 3.

4         On July 8, 2019, the court granted plaintiff's IFP application, but dismissed the complaint

5    and gave plaintiff leave to amend.  ECF No. 7.  Plaintiff's first amended complaint was similarly

6    dismissed.  ECF Nos. 12, 13.  On March 20, 2020, plaintiff filed the second amended complaint

7    ("SAC"), which is the operative complaint, alleging constitutional violations based on events that

8    occurred on October 25, 2016, and in November 2016.  ECF No. 16 at 4-10, 14.

9              B.  Motion to Dismiss for Fraudulent IFP

10        On March 7, 2024, defendants filed a motion to dismiss plaintiff's case with prejudice

11    under 28 U.S.C. § 1915(e)(2), arguing that plaintiff made false allegations of poverty in bad faith

12    on his IFP application.  ECF No. 31.  Defendants claim that plaintiff made two false allegations:

13    (1) that he had no income in the twelve months prior to filing his IFP application, and (2) that he

14    had no assets.  ECF No. 31 at 14-16.  Defendants assert that plaintiff made these false allegations

15    in bad faith because he is an experienced litigator who intentionally diverted settlement funds to

16    conceal money from the court and intentionally failed to disclose that he had access to a trust

17    account (the "Witkin Trust Account") that contained over $12,000 in assets.  Id. at 16-19.  In

18    support of their position, defendants heavily rely on two other cases where plaintiff was found to

19    have made false allegations in bad faith: Witkin v. Sloan, No. 2:16-cv-2950 JAM EFB P, 2019

20    WL 6918216, at *6, 2019 U.S. Dist. LEXIS 218427, at *15-17 (E.D. Cal. Dec. 19, 2019),

21    findings and recommendations adopted 2020 WL 2193608, 2020 U.S. Dist. LEXIS 80058 (E.D.

22    Cal. May 6, 2020), and Witkin v. Lee, No. 2:17-cv-0232 JAM EFB P, 2020 WL 2512383, at *6,

23    2020 U.S. Dist. LEXIS 86104, at *15-17 (E.D. Cal. May 15, 2020), findings and

24    recommendations adopted 2020 WL 4350094, 2020 U.S. Dist. LEXIS 134631 (E.D. Cal. July 29,

25    2020).  Id. at 10-12, 14-15, 17-19.

26        Defendants alternatively seek dismissal without prejudice *or* for the court to revoke

27    plaintiff's IFP status and require him to pay the full filing fee or submit a new IFP application.

28    Id. at 20.  If plaintiff submits a new IFP application, defendants ask that they be given an

1    opportunity to respond considering a recent decision in this court finding that plaintiff

2    intentionally misrepresented his post-parole poverty status in bad faith.  Id. at 20-21.

3              C.  Opposition to Motion to Dismiss

4         Plaintiff responds that he did not disclose the $1,200 on his IFP application in this case

5    because he mistakenly thought he had received it thirteen months before he filed the IFP instead

6    of eleven months; he has never had access to the Witkin Family Trust account; and his parents

7    loaned him money from the Witkin Family Trust account to help cover the cost of a deposition in

8    another case.  ECF No. 35.

9              D.  Reply to Opposition

10         In their reply, defendants argue that plaintiff has not shown that he did not have access to

11    the Witkin Family Trust account and that plaintiff's "new excuse" contradicts a prior excuse

12    provided in a different case for why he did not disclose the settlement funds on his IFP

13    application.  ECF No. 36 at 1-3, 6.  Defendants also renew their arguments that plaintiff is an

14    experienced litigator who knew what he was doing when he diverted the funds to his mother, and

15    had plaintiff not diverted the funds, his prison trust account would have shown that he had $4,000

16    remaining from the settlement funds when he filed for IFP in this case.  Id. at 4-6.

17              E.  Plaintiff's Other Cases Dismissed for Fraudulent IFP

18         In Sloan and Lee, plaintiff signed IFP applications on December 5, 2016, which he later

19    filed, declaring under penalty of perjury that he had no assets and that in the past twelve months

20    he had no income.  Sloan, 2019 WL 6918216 at *1, 2019 U.S. Dist. LEXIS 218427 at *1; Lee,

21    2020 WL 2512383 at *1, 2020 U.S. Dist. LEXIS 86104 at *1.  The defendants sought to dismiss

22    those cases based on fraudulent IFPs.  Id.  The court took judicial notice of:  (1) the settlement

23    agreement in Witkin v. Swarthout, No. 2:13-cv-1931 GEB KJN, where plaintiff agreed to settle

24    the case for $10,625 and use approximately $4,700 of the settlement to pay off restitution fines

25    and asked that the remaining amount be sent to his mother; (2) the settlement conference in

26    Witkin v. Solis, No. 1:12-cv-1256 AWI MJS, in which plaintiff agreed to settle the case for

27    $1,200 and asked the full amount be sent to his mother; and (3) a "Notice of Proof of Availability

28    of Funds for Plaintiff's Deposition of Dr. B. Barnett" in Witkin v. Lotersztain, Case No. 2:15-cv-

1   0638 MCE KJN, which showed the "Witkin Family Trust" account held $12,205.10 in assets and

2   $6,200.76 in debts.  Id.

3   　　　With respect to false allegations, the court found that "[e]ven disregarding the Witkin

4   Family Trust, which plaintiff claims he only has access to when permitted by his parents, plaintiff

5   received $5,666.09 in November 2016, less than a month before he averred that he had received

6   no income from any source in the prior 12 months," and that because "[t]he settlement was made

7   with *him*, to compensate *him*, and it was at *his* direction that the money was sent to his mother" he

8   was obligated to disclose it as income.  Sloan, 2019 WL 6918216 at *5, 2019 U.S. Dist. LEXIS

9   218427 at *13 (emphasis in original); Lee, 2020 WL 2512383 at *5, 2020 U.S. Dist. LEXIS

10  86104 at *13.  The court further found that the situation was akin to that in Cuoco v. U.S. Bureau

11  of Prisons, 328 F. Supp. 2d 463 (S.D.N.Y. Aug. 2, 2004), in which plaintiff had prevented checks

12  from being deposited in her trust account and had diverted settlement funds to her mother to

13  perpetuate a negative balance in her prison account  The court rejected plaintiff's argument that

14  because the settlement funds were used to repay a loan to her parents, she did not have to claim it

15  as income.  Id.

16  　　　The court also found that plaintiff had made the false allegations in Sloan and Lee in bad

17  faith because the timeline of relevant events and the fact that plaintiff was an experienced litigator

18  showed plaintiff had engaged in deceptive conduct.  Sloan, 2019 WL 6918216 at *6, 2019 U.S.

19  Dist. LEXIS 218427 at *15-17 (emphasis in original); Lee, 2020 WL 2512383 at *6, 2020 U.S.

20  Dist. LEXIS 86104 at *15-17  In reaching this conclusion the court inferred that at the time

21  plaintiff decided to divert the funds to his mother, he knew he was going to file additional

22  litigation based on conduct that had already occurred.  Id.

23  　　II.　　Legal Standard

24  　　　Under the Prison Litigation Reform Act of 1995 ("PLRA") an inmate may proceed in

25  federal court without paying filing fees if the inmate "submits an affidavit that includes a

26  statement of all assets such [inmate] possesses" and a prison trust account statement for the six

27  months prior to the filing of the complaint, establishing that the inmate "is unable to pay such fees

28  or give security thereof."  28 U.S.C. § 1915(a).  If at any point in the litigation the court

4

1    determines that the allegations of poverty were untrue, the court must dismiss the case.  28 U.S.C.

2    § 1915(e)(2)(A).

3         In the Ninth Circuit, before dismissing, "a showing of bad faith is required, not merely

4    inaccuracy." Escobedo v. Applebees, 787 F.3d 1226, 1234 n.8 (9th Cir. 2015); Martinez v.

5    Baughman, No. 22-16750, 2024 WL 1300001, at *1 (9th Cir. Mar. 27, 2024).  Accordingly, the

6    two essential questions are whether (1) plaintiff made allegations of poverty that were untrue, and

7    if so, (2) whether plaintiff provided the false allegations of poverty in bad faith.  If the court

8    concludes the answer to both questions is yes, the court must dismiss with prejudice.  See 28

9    U.S.C. § 1915(e)(2).  If the court concludes that the plaintiff did not act in bad faith, a lesser

10   sanction, such as "revoking IFP and provid[ing] a window for the plaintiff to pay the filing fees,

11   or dismissing without prejudice," is more appropriate.  See Lee, 2020 WL 2512383 at *3, 2020

12   U.S. Dist. LEXIS 86104 at *7 (citing cases).

13        III.    Analysis

14             A.  Request for Judicial Notice

15        Defendants' motion is accompanied by a request for judicial notice.  ECF No. 31-2.  They

16   request that the court take judicial notice of dockets, complaints, IFP applications, motions,

17   objections to findings and recommendations, and other filings in plaintiff's other litigation before

18   this court.  Id. at 2-3.  Plaintiff has not opposed this request.

19        For purposes of the present motion, the court takes judicial notice of the existence and

20   contents of the ten documents identified by defendants in their request.  See Fed. R. Evid. 201;

21   see also United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980) ("[A] court may take judicial

22   notice of its own records in other cases." (citations omitted)).  However, the court does not

23   assume the truth of the facts asserted.  See Tri v. Gutierrez, No. 1:22-cv-0836 KES SKO PC,

24   2024 WL 1801392, at *3, 2024 U.S. Dist. LEXIS 75805, at *6 (E.D. Cal. Apr. 25, 2024) (citing

25   M/V Am. Queen v. San Diego Marine Constr. Corp., 708 F.2d 1483, 1491 (9th Cir. 1983)).

26             B.  Plaintiff Made False Allegations

27        Defendants argue that plaintiff made the following false allegations: (1) that he had not

28   received any income in the prior twelve months, which is untrue because he had received $1,200

                                                  5

1    on January 27, 2017 as part of his settlement in Solis; and (2) that he had no assets, which is

2    untrue because he had access to the Witkin Family Trust, containing over $12,000 in assets,

3    which he used to pay for a deposition in another case.  ECF No. 31 at 14-16.  In opposition,

4    plaintiff does not dispute that he received $1,200 in settlement fund within the timeframe at issue.

5    ECF No. 35 at 1-2.  Instead, he argues that he did not disclose this amount because he mistakenly

6    thought he had received that amount thirteen months before he filed the IFP application, instead

7    of eleven months.  Id.  In reply, defendants argue that plaintiff's "new excuse" that he "forgot"

8    when he received the settlement agreement contradicts his prior excuse in other litigation where

9    he said he did not think he needed to disclose settlement funds because the funds had been

10   diverted to his mother.  ECF No. 36 at 1-3.  Defendants also argue that plaintiff provides

11   insufficient evidence to show he did not have access to the Witkin Family Trust account.  Id. at 6-

12   7.

13          Defendants' reply argument about the *basis* for plaintiff's allegations is best addressed

14   regarding bad faith.  The relevant question at this stage is whether plaintiff made allegations of

15   poverty that were untrue, and not why he made them.

16          The parties do not dispute that within the twelve months prior to plaintiff filing the IFP in

17   this case, plaintiff's mother received $1,200 on plaintiff's behalf for the Solis settlement.

18   Plaintiff's failure to disclose this income constitutes a false allegation of poverty during the

19   relevant period.

20          With respect to the assets in the Witkin Family Trust, the court finds that defendants have

21   not established that plaintiff had *access* to the account.  That plaintiff had used the account as

22   proof of available funds to cover a deposition in another case does not in and of itself establish

23   access.  Defendants' rely on Kennedy v. Huibregtse, 831 F.3d 441 (7th Cir. 2016) to suggest

24   otherwise, but this reliance is misplaced.  In Kennedy, the trust account was *created and managed*

25   *for* the plaintiff.  Kennedy, 831 F.3d at 443.  Here, there is no evidence that the Witkin Family

26   Trust account was created or managed for plaintiff.  Additionally, the court finds it misleading for

27   the defendants to emphasize the assets in the Witkin Family Trust while leaving out the fact that

28   the same trust includes a debt for more than half the asset amount.  ECF No. 31-2 at 19.  Such

1    exclusion effectively exaggerates the amount of money plaintiff allegedly concealed.  The

2    defendants also fail to explain how a bank statement for a period ending a year before plaintiff

3    signed the IFP application in this case establishes that these assets existed at the time plaintiff

4    signed the IFP application, creating an obligation to disclose, much less that the account is

5    plaintiff's or managed for plaintiff.  Without more, the court cannot conclude that plaintiff had

6    assets that he was required to but failed to disclose.

7        Defendants' reliance on a telephone call between plaintiff and his mother eleven months

8    before signing the IFP application, in which plaintiff referred to a "specific figure" that he has,

9    fares no better.  See ECF No. 31 at 10; ECF No. 31-1 at 13.  During the same call, plaintiff

10    indicated that the Attorney General understood that plaintiff could *either* pay for the deposition

11    himself *or* "can get somebody to pay it."  Id.  The use of the Witkin Family Trust account as

12    proof of ability to pay for the deposition in another case does not help identify *who* paid for the

13    deposition and *who* the funds belonged to.

14        For the reasons discussed above, the court finds that plaintiff made false allegations of

15    poverty when he failed to disclose the $1,200 in income earned during the prior twelve months,

16    but defendants have not established that plaintiff made false allegations concerning his assets.

17            C.  Defendants Have Not Established That Plaintiff Acted in Bad Faith

18        Defendants argue that plaintiff's intent to deceive and/or mislead the court is evidenced by

19    the following : (1) he clearly had access to the Witkin Family Trust to pay for the filing fee,

20    because he had used the same trust to pay for a deposition in another case earlier that year; (2) as

21    an experienced litigator with extensive knowledge and familiarity with the IFP system, he

22    attempted to conceal from the court the settlement amounts in Swarthout and Solis by diverting

23    the money to his mother instead of his prison trust account; and (3) this court has already found

24    that he acted in bad faith when he diverted the settlement funds to improve his chances of

25    obtaining IFP status in Sloan and Lee.  Id. at 16-19.

26        Plaintiff responds that he did not make false allegations about his income or assets in bad

27    faith because his failure to disclose the $1,200 was an honest mistake in remembering when the

28    check was issued, and he does not actually have access to the Witkin Family Trust account, which

1    belongs to his parents.  ECF No. 35.

2        In reply, defendants argue that plaintiff has not shown that he did not have access to the

3    Witkin Family Trust account, and that plaintiff's "new excuse" that he "forgot" when he received

4    the Solis settlement funds contradicts his prior excuse in other litigation where he said he did not

5    think he needed to disclose the settlement funds because the funds were diverted to his mother.

6    ECF No. 36 at 1-3.  Defendants also argue that at the time plaintiff diverted his settlement funds

7    to his mother, he was an experienced litigator who knew he planned to bring this lawsuit based on

8    events that had already taken place and intentionally diverted the settlement funds so that he

9    would not have to pay the filing fee for his new case.  Id. at 4.  Defendants claim that had plaintiff

10   not diverted settlement funds in November of 2016 and January of 2017 to his mother, his trust

11   account would still have had over $4,000 remaining after paying off his $2,535 debt in filing fee

12   obligations.  Id. at 5.  Defendants claim that the IFP application in this case was filed

13   contemporaneously with the IFP applications that judges in other cases had determined contained

14   false allegations made in bad faith, id. at 1-4,[1] and that plaintiff's behavior is similar to the

15   deceitful behavior in Cuoco, 328 F. Supp. 2d 463.  Id.  Defendants further argue that whether or

16   not plaintiff would have been entitled to proceed IFP regardless of his inaccurate representation is

17   irrelevant.  Id. at 6-7.

18       As an initial matter, because the court has determined that plaintiff did not make false

19   allegations concerning his assets, the court need not resolve the question whether plaintiff's

20   failure to disclose the Witkin Family Trust account on his IFP application was in bad faith.

21   Accordingly, the issue here is whether plaintiff acted in bad faith when he failed to disclose the

22   $1,200 in income during the prior twelve months.  For the reasons discussed below, the

23   undersigned cannot conclude that he did.

24       Despite their efforts, defendants fall short of establishing an ulterior motive for why

25

26   [1] The court notes that the Sloan and Lee IFP applications were not filed contemporaneously with
     the IFP in this case, but rather almost a year before the IFP application in this case.  ECF No. 3

27   (plaintiff's IFP application in this case, filed December 15, 2017); ECF No. 31-2 at 28-30
     (plaintiff's IFP application in Sloan, filed December 19, 2016), 33 (plaintiff's IFP application in

28   Lee, filed February 2, 2017).

1    plaintiff failed to disclose the $1,200.  First, it is not necessarily the case that plaintiff's "new

2    excuse" contradicts his prior excuse.  Plaintiff could have thought he did not need to disclose the

3    settlement funds in a prior IFP in a separate litigation because the funds were sent to his mother,

4    and a year later believed that he did not need to disclose those same funds in a subsequent IFP

5    because he believed more than twelve months had passed since the settlement funds were issued.

6    That other judges of this court have rejected the first reason does not mean that this court must

7    reject the second reason.

8         Second, defendants fail to provide evidence to support their assertion that had plaintiff not

9    diverted the settlement funds, he would still have had $4,000 in his trust account a year later.

10   Perhaps some, or even most, of those funds would have remained.  However, it is not necessarily

11   so.  The court cannot conclude that the funds would have been untouched in the ensuing six to

12   twelve months, such that the full amount would have been reflected in plaintiff's prisoner trust

13   account statements at the time of his IFP application.

14        Third, although there appears to be no dispute that at the time plaintiff filed the present

15   action and IFP application, he was an experienced litigator with seven other pending civil rights

16   actions, see ECF No. 3 at 3 (prison trust account showing seven PLRA obligations); ECF No. 31

17   at 17-18; ECF No. 35; ECF No. 36 at 4, this alone will not suffice to rule out the possibility that

18   plaintiff made a mistake.  Put differently, the court will not presume bad faith simply because

19   plaintiff is an experienced litigator—especially where there is no binding legal support for such

20   presumption.

21        Fourth, unlike in plaintiff's prior cases, Sloan and Lee, the timeline in this case does not

22   support an inference of deceitful intent.  In Sloan and Lee, the incidents that gave rise to the

23   litigation took place in 2015 and 2016.  Sloan, 2019 WL 6918216 at *6, 2019 U.S. Dist. LEXIS

24   218427 at *16; Lee, 2020 WL 2512383 at *6, 2020 U.S. Dist. LEXIS 86104 at *16.  Four to six

25   months later,[2] when plaintiff settled Swarthout and diverted the settlement funds to his mother,

26   _____

27   [2]  Sloan and Lee refer to a four-month gap, but the gap in Sloan from February and March of
     2016 to August 2016 is a five- to six-month gap.  Sloan, 2019 WL 6918216 at *6, 2019 U.S. Dist.
28   LEXIS 218427 at *16; Lee, 2020 WL 2512383 at *6, 2020 U.S. Dist. LEXIS 86104 at *16.  The
     exact length of the gap in Lee is unclear, as the court does not include the months and just refers

1    plaintiff likely had a very good idea of whether he was going to pursue the Sloan and Lee

2    litigation.  Id.  It is even more likely, if not almost certain, that when plaintiff settled Solis—eight

3    to nine months after the incidents giving rise to Sloan and Lee, and only a month before filing

4    Sloan and Lee—plaintiff knew he was going to file Sloan and Lee and intentionally diverted the

5    Solis settlement funds to avoid paying the filings fees in those cases.  See id.  The same cannot be

6    said about the present case.  The incidents giving rise to the claims occurred in October and

7    November of 2016, and most of them occurred *after* the $1,200 Solis settlement agreement and

8    *after* plaintiff had already directed payment to his mother.  See ECF No. 16 at 4-10, 14 (plaintiff's

9    allegations of events); see also ECF No. 31-1 at 47-49 (Solis settlement agreement).

10         Timing and knowledge of impending new litigation appear to be critical in finding bad

11   faith in diversion of settlement fund cases.  See Sloan, 2019 WL 6918216 at *6, 2019 U.S. Dist.

12   LEXIS 218427 at *16; Lee, 2020 WL 2512383, at *6, 2020 U.S. Dist. LEXIS 86104 at *16; see

13   also Cuoco, 328 F. Supp. 2d at 467-68 (finding bad faith where plaintiff accepted an offer of

14   judgment for $10,000 three weeks before filing the present action, and settled another suit for

15   $3,500 one week before filing the present action, and directed the funds to her mother instead of

16   her prison trust account to perpetuate a negative balance in her account).  Because plaintiff is

17   unlikely to have known with certainly that he would be pursuing future litigation in *this* case, the

18   court is not persuaded that plaintiff failure to disclose the $1,200 in *this* case reflects bad faith.

19         In sum, although the findings of plaintiff's bad faith misrepresentations in other cases

20   raise legitimate suspicions about his honesty regarding eligibility for IFP status, there is

21   insufficient evidence here to support a finding of bad faith in relation to the false statements on

22   the IFP application in this case.

23         Accordingly, the court recommends denial of defendants' motion to dismiss and

24   imposition of a lesser sanction for plaintiff's failure to disclose the $1,200 Solis settlement

25   amount on his IFP application.  The recommended sanction is that plaintiff be ordered to pay the

26   _____

     to incidents that occurred in 2015 and 2016.  Lee, 2020 WL 2512383 at *6, 2020 U.S. Dist.
27   LEXIS 86104 at *16.  Nonetheless, given that the incidents occurred in 2015 and 2016 and the
     court references a four-month period, it is reasonable to conclude there was at least a four-month
28   gap between the last incident alleged in Lee and the August 2016 settlement.

1   $405.00 filing fee in full or file a new application to proceed IFP within thirty days of the court's

2   order adopting these findings and recommendations.  If plaintiff elects to file a new IFP

3   application, he must provide a complete picture of his current financial situation, including an

4   explanation as to his ability to provide basic necessities for himself, and must include any

5   information relating to any financial assistance he receives, the amount of this assistance, and the

6   name of the person or entity providing this assistance.  Additionally, defendants should have an

7   opportunity to respond to any future IFP application filed in this case.

8   **IV.     Conclusion**

9        In accordance with the above, IT IS HEREBY ORDERED that Defendants' request for

10  judicial notice (ECF No. 31-2) is GRANTED.

11       IT IS RECOMMENDED that:

12       1.  Defendants' motion to dismiss pursuant to 28 U.S.C. § 1915(e)(2) (ECF No. 31) be

13  DENIED;

14       2.  Plaintiff be ordered to pay the $405.00 filing fee in full *or* file a new application to

15  proceed in forma pauperis within thirty days from any order by the district court adopting these

16  findings and recommendations, or face dismissal; and

17       3.  If plaintiff files a new application to proceed in forma pauperis, defendants be given

18  an opportunity to respond.

19       These findings and recommendations are submitted to the United States District Judge

20  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

21  after being served with these findings and recommendations, plaintiff may file written objections

22  with the court.  The document should be captioned "Objections to Magistrate Judge's Findings

23  and Recommendations." Plaintiff is advised that failure to file objections within the specified

24  time waives the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th

25  Cir. 1991).

26  DATED: January 21, 2025

27                                          ALLISON CLAIRE
                                           UNITED STATES MAGISTRATE JUDGE
28